**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BARTHOLOMEW CHARLES,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION, successor by merger to FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>Defendant. | C.A. No. ________________<br><br>JURY DEMANDED |

## COMPLAINT

Plaintiff Bartholomew Charles brings this action against Defendant Federal Express Corporation, successor by merger to FedEx Ground Package System, Inc. (collectively, "FedEx") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*..

## PROCEDURAL BACKGROUND

1. Plaintiff hereby re-files his claims against FedEx. Plaintiff previously opted in to the conditionally certified collective action of *Claiborne v. FedEx Ground Package Sys., Inc.*, No. 2:18-cv-01698 (W.D. Pa.), and after that case was voluntarily decertified filed claims against FedEx in the mass action case of *Abner v. Federal Express Corp., s/b/m to FedEx Ground Package Sys., Inc.*, No. 2:24-cv-01129 (W.D. Pa.). Plaintiff is listed in the caption and in paragraph 6900 of the *Abner* Complaint. *See Abner*, Dkt. No. 17. Pursuant to the Court's order in that case dated May 18, 2026, Plaintiff's claims were severed, and Plaintiff was directed to re-

file in this District within sixty (60) days so that his claims would not be time-barred (*see* Exhibit A to the Complaint).[1]

**JURISDICTION AND VENUE**

2. Jurisdiction is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b)(2), as this is the district where Plaintiff worked for FedEx.

**PARTIES**

4. Plaintiff is an individual who worked as a delivery driver for FedEx in this District but was paid by intermediary entities that FedEx calls "independent service providers." Plaintiff has been eligible to receive overtime pay under the FLSA because Plaintiff has driven a vehicle weighing less than 10,001 pounds but has not received overtime pay for hours worked beyond 40 per week.

5. Federal Express Corporation is a Delaware corporation with its principal place of business in Memphis, Tennessee.

6. FedEx Ground Package System, Inc. is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.

7. Federal Express Corporation is the successor, by merger, to FedEx Ground Package System, Inc.

8. Federal Express Corporation and FedEx Ground Package System, Inc. are referred to herein collectively as "FedEx."

---

1 The parties agreed to toll the 60-day deadline while pursuing mediation. Mediation was unsuccessful, and Plaintiff has timely filed this Complaint.

9. At all relevant times, FedEx has engaged in the business of the delivery of packages nationwide and within this District.

10. FedEx employs thousands of individuals across the country, including Plaintiff, who have engaged in interstate commerce.

11. FedEx is an employer under the FLSA.

## FACTS

12. FedEx operates a package pickup and delivery business servicing customers throughout the United States.

13. FedEx operates a nationwide network of package handling terminals to serve its customers' package pickup and delivery needs around the country. FedEx advertises its delivery service and negotiates with its customers to provide the package pickups and deliveries that are performed by Plaintiff and other delivery drivers.

14. FedEx has employed thousands of package delivery drivers within the United States, who: (a) have worked for FedEx through intermediary employers called "independent service providers" ("ISPs"), who pay the drivers; (b) have been classified as "employees" of the FedEx ISPs; (c) have worked more than forty hours per week delivering packages for FedEx but have not been paid time-and-a-half compensation for all hours worked beyond forty each week; and (d) have driven, in whole or in part, vehicles with a gross vehicle weight rating of 10,001 pounds or less. These individuals are referred to herein as "delivery drivers."

15. Plaintiff worked for FedEx as a delivery driver in this District.

### I. FEDEX CONTRACTS WITH INTERMEDIARY BUSINESSES ACROSS THE COUNTRY TO PROVIDE PACKAGE PICKUP AND DELIVERY SERVICES

16. Before instituting the ISP model of employing its delivery drivers through intermediary entities, FedEx relied on delivery drivers that it hired directly and purported to

classify as "independent contractors," pursuant to standard operating agreements that FedEx required its drivers to sign. After years of defending litigation challenging the employment status of these drivers around the country—during which time multiple courts around the country held that FedEx misclassified its delivery drivers as independent contractors when they were actually FedEx's employees under various state wage laws[2]—FedEx shifted its method of hiring drivers in many states by contracting with ISPs in an effort to continue to avoid liability under the wage laws for its delivery drivers.

17. FedEx ISPs are typically responsible for three or more FedEx delivery routes. FedEx requires its ISPs to hire FedEx's workforce of delivery drivers, and FedEx further requires the ISPs to classify these delivery drivers as the ISPs' employees.

18. FedEx negotiates with the ISPs the price it pays for each delivery route. FedEx is aware of the labor costs required for pricing the routes, and the labor costs are taken into account when FedEx sets the route prices. FedEx does not account for overtime pay for delivery drivers in setting the amounts it pays the ISPs.

19. Based on the economic realities of the relationship between FedEx and the delivery drivers, it is clear that the delivery drivers working under the intermediary ISPs are also FedEx employees under the FLSA.

---

[2] *See, e.g.*, *Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66 (Kan. 2014) (FedEx drivers in Kansas were misclassified as independent contractors when they were employees as a matter of law); *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 997 (9th Cir. 2014) (same, for FedEx delivery drivers in California); *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1046–47 (9th Cir. 2014) (FedEx delivery drivers in Oregon were FedEx's employees under Oregon's economic reality test and Oregon's right to control test). FedEx ultimately settled these and other pending cases challenging its misclassification of drivers as independent contractors.

20. Delivery drivers working under ISPs, including Plaintiff, have typically worked full time and exclusively as FedEx drivers, delivering FedEx's packages to FedEx customers while wearing FedEx uniforms and driving vehicles bearing FedEx's logos and color scheme.

21. Plaintiff and other delivery drivers working under ISPs have worked out of FedEx-owned and managed terminals throughout the country, where FedEx managers, package handlers, and other FedEx employees oversee and manage the package delivery operations.

22. Plaintiff has interacted with FedEx managers and other FedEx employees while performing his work at the FedEx terminal at the beginning and end of his workday.

23. The services rendered by Plaintiff and other delivery drivers working under ISPs are an integral part of FedEx's business because FedEx is in the business of package delivery, and Plaintiff and these other delivery drivers physically deliver packages to FedEx's customers on FedEx's behalf.

## II. FEDEX UNIFORMLY DICTATES THE TERMS OF EMPLOYMENT BETWEEN DRIVERS AND ISPS AND CONTROLS THE CONDITIONS OF EMPLOYMENT

24. Plaintiff and other delivery drivers working under ISPs have performed their delivery work on strict and predictable schedules pursuant to FedEx's delivery requirements. The drivers' schedules are dictated by the volume of packages that FedEx requires them to deliver each day on their routes. Neither these drivers, nor the intermediary ISPs who they work under, control the volume of package pickup and delivery work that the drivers perform.

25. FedEx uniformly imposes the same basic job duties on all of its drivers. These duties include:

a. collecting packages from the FedEx terminal;
b. delivering packages to the customer pursuant to FedEx's detailed rules;
c. collecting and transmitting customer signatures and scanning packages pursuant to FedEx's detailed rules;

d. picking up packages and delivering them to the FedEx terminal;

e. returning undelivered packages to the FedEx terminal; and

f. preparing daily logs and vehicle inspection reports, which must be submitted to FedEx.

26. FedEx also requires drivers to adhere to a standard set of rules and requirements. These rules and requirements include:

a. commercial delivery signature requirements;

b. residential delivery package release requirements;

c. alcohol delivery requirements;

d. attempted deliveries and pickups, including making three attempts on different service days to deliver any package;

e. indirect signature requirements;

f. direct signature requirements;

g. adult signature requirements;

h. how to "release packages" (where and how to place them);

i. how to complete "indirect" deliveries;

j. how to complete appointment deliveries;

k. when and how to complete evening deliveries;

l. how to complete date certain deliveries;

m. how to complete deliveries in which the recipient is billed;

n. collecting charges when deliveries are paid for at the time of pickup;

o. requirements for package scanning;

p. requirements for scanner data uploading;

q. requirements for noting undelivered packages;

r. timely completing a Driver Release Verification;

s. timely completing a Confirmation of Delivery Form; and

t. requirements for third-party deliveries.

27. Other examples of FedEx's micromanagement of how Plaintiff and other delivery drivers have performed their work include FedEx:

a. requiring that the delivery drivers have specific equipment on their vehicles when they perform deliveries for FedEx;

b. requiring the delivery drivers to wear a uniform bearing FedEx's logos and color scheme and to maintain personal appearance standards established by FedEx;

c. requiring the delivery drivers to place specific signage on their vehicles bearing FedEx's name and logo;

d. assigning the specific packages that the delivery drivers must deliver and when the packages must be delivered;

e. requiring the drivers to scan all assigned packages with a specific scanner designated by FedEx (which is issued and owned by FedEx) upon loading each morning and upon delivery;

f. requiring the drivers to begin and end each day at a designated terminal operated by FedEx;

g. addressing customer comments and complaints regarding drivers' job performance and using its own discretion on what action to take; and

h. closely monitoring the job performance of the drivers, tracking whether each delivery is "successful" based on FedEx's own standards.

28. FedEx requires all ISPs to classify the delivery drivers as employees.

29. ISPs must agree to submit documentation to FedEx establishing that drivers are classified as ISPs' employees under applicable law.

30. FedEx bars drivers from working for FedEx's competitors.

31. ISPs' entire businesses are structured around FedEx deliveries. These businesses do not—and cannot—function independently of FedEx.

32. FedEx drivers working under ISPs have often worked under different ISPs, and at times directly for FedEx, but their work responsibilities, and procedures they have been required to follow, have not differed in any material way regardless of which ISP they have worked under or whether they have worked directly for FedEx.

33. FedEx often coordinates the assignment of drivers to ISPs. When a delivery driver wants to work for FedEx, FedEx often tells them which ISP to work with. When a driver needs a new ISP to work with, FedEx often coordinates them to work under a new ISP.

34. Indeed, many FedEx drivers were initially hired directly by FedEx to perform its deliveries, until FedEx told drivers that they had to work under an ISP. These drivers' responsibilities and the procedures they were required to follow did not change in any material way following the conversion to drivers working under ISPs. Drivers continued to report to FedEx terminals each morning, drove a vehicle with a FedEx logo on it, and followed FedEx procedures to complete their assigned deliveries.

## III. FEDEX IMPOSES DETAILED HIRING CRITERIA FOR DRIVERS

35. FedEx orders a professional background check of every delivery driver before the driver is allowed to start working for FedEx. FedEx also requires every driver to pass a Road Test before they begin to work. FedEx may also conduct subsequent background checks of a delivery driver and/or require additional road tests during the driver's employment. FedEx maintains copies of the background checks and a Record of the Road Tests for the delivery drivers working under an ISP.

36. FedEx establishes hiring requirements applicable to all drivers. Drivers must pass controlled substances and alcohol screenings and agree to random screenings by FedEx.

37. Driving records must satisfy eight distinct FedEx-defined criteria regarding safe driving from the past 60 months and nine more from the past 36 months.

38. FedEx also imposes specific experience and training requirements. Drivers are required to have one year of commercial motor vehicle driving experience within the previous three years, or six months of driving experience within the previous three years with the successful completion of a driver training course.

39. FedEx is entitled to obtain proof of an applicant's driving experience and completion of training. FedEx also has the power to conduct investigations and inquiries

regarding the driving experience and background of drivers seeking employment to ensure they meet these standards.

## IV. FEDEX HAS AUTHORITY TO SUSPEND AND TERMINATE DRIVERS, AMONG OTHER DISCIPLINARY POWERS

40. FedEx has uniform authority to suspend and terminate drivers through its standardized disqualification process.

41. FedEx maintains a policy that includes thirty-one separate offenses that require a driver's work for FedEx to be terminated or suspended. If a driver is found guilty of one of these offenses, then that driver is either no longer permitted to drive for FedEx (through ***any*** ISP) or must be suspended for a time period specified by FedEx.

42. FedEx also has the authority to make a preliminary determination that a driver is in violation or is "guilty" of any of these thirty-one offenses.

43. FedEx has agreed to indemnify and hold harmless ISPs and drivers for the actions of all drivers while operating a vehicle in connection with their work for FedEx.

44. FedEx requires that it be informed of any traffic citations involving drivers.

45. FedEx must also be informed of any accident involving drivers, regardless of whether there is personal injury or who is at fault.

46. FedEx requires all drivers to maintain an "Accident Packet" in their vehicle at all times and fill it out any time there is an incident or accident.

47. FedEx provides that it will make a good faith determination of the preventability of each accident in which a driver is involved, according to uniform standards.

48. FedEx's ability to determine whether an accident was "preventable" gives it significant control over the drivers because a driver who is involved in certain "preventable" accidents will be terminated.

## V. FEDEX MAINTAINS DRIVERS' SCANNER DATA AND EMPLOYMENT RECORDS

49. FedEx maintains records showing the hours worked by delivery drivers, including Plaintiff. For example, drivers are required to scan all assigned packages with a specific scanner designated by FedEx upon loading each morning and upon delivery. The data from the scanner belongs to FedEx and is reviewed by FedEx to ensure that deliveries are made on time. The data includes, among other things, the date and time each package was scanned.

50. Scanner data (and other data maintained by FedEx) generally reflect the time at which a driver logs in to the scanner as on duty, the date, information identifying the vehicle driven each day and its gross vehicle weight rating, and the time at which the driver logs out of the scanner as off duty, among other things.

51. FedEx's scanner data confirms that FedEx has ready access to records showing the time a driver logged into FedEx's scanner at a terminal, the time a driver departed the terminal, and the time of the driver's last delivery of the day.

52. Through the scanner data, as well as Plaintiff's daily interactions with FedEx managers, FedEx knows or should know the number of hours Plaintiff has worked each week.

53. FedEx thus has known, or should have known, that Plaintiff has regularly worked more than 40 hours per week but has not been paid overtime for every week Plaintiff has worked more than 40 hours.

54. In addition to its knowledge regarding how much drivers are generally paid, based upon its pricing of routes and calculations of labor costs for servicing these routes, FedEx has the ability to, and does frequently, determine actual payments made by ISPs to the drivers through its audits of ISPs.

55. Through periodic "wage and hour assessments," FedEx collects confidential employment documents from ISPs—including payroll and timekeeping records, paystubs, E-

Verify confirmations, federal and state tax forms, and quarterly unemployment insurance reports. FedEx audits its ISPs to confirm the ISPs are meeting their alleged contractual obligations, including purporting to confirm that delivery drivers are properly paid minimum wage and overtime.

56. FedEx issues standardized documents called "Compliance Investigation Reports," detailing the findings of its wage and hour assessments. In these reports, FedEx has detailed its findings as to whether, *inter alia*, ISPs pay overtime to drivers, properly record drivers' hours worked, properly maintain drivers' payroll documents, and classify drivers as their employees.

57. FedEx also requires ISPs to complete standardized "Annual Compliance Certifications," which require them to answer questions about wage and hour compliance.

58. FedEx has also issued a uniform document titled "Electronic Compliance Assessment Overview," described as a "handbook," which contains detailed step-by-step instructions explaining how FedEx employees should conduct wage and hour assessments related to the drivers.

59. FedEx reserves the right to terminate ISPs for failing to maintain proper payroll and timekeeping records for its drivers.

60. FedEx maintains records showing the weight of the vehicles drivers are assigned to drive for a route.

## VI. Plaintiff's Employment with FedEx

61. FedEx drivers, including drivers such as Plaintiff who have been paid by intermediary ISPs, have routinely worked more than forty hours per week.

62. FedEx establishes delivery times for each package. FedEx expects its delivery drivers, including Plaintiff, to meet those delivery times.

63. Drivers such as Plaintiff begin their workday at FedEx's terminal. Drivers, including Plaintiff, typically arrived at FedEx's terminal at least 30 minutes to an hour before starting their delivery route because they are required to organize, scan, and load their packages for the day onto their truck before departing the terminal.

64. Drivers such as Plaintiff return to FedEx's terminal at the end of their workday. Plaintiff is required to unload any packages that could not be delivered and/or picked up during the day upon returning to the terminal.

65. Plaintiff has regularly worked more than 8 hours per day, including time spent working at FedEx's terminal at the start and end of the day.

66. Plaintiff has typically worked at least 5 days per week. As such, throughout his employment with FedEx, Plaintiff regularly worked more than 40 hours in a week.

67. Plaintiff has driven a truck weighing less than 10,001 pounds during his employment with FedEx.

68. Plaintiff is thus eligible for overtime pay under the FLSA.

69. However, Plaintiff has not been paid overtime for all hours worked beyond 40 hours per week.

70. Because FedEx is Plaintiff's employer under the FLSA, FedEx is liable to Plaintiff for the unpaid overtime.

71. FedEx has avoided its responsibilities under the FLSA by establishing a system through which FedEx employs Plaintiff and other drivers who are paid by intermediary ISPs. FedEx knew, or should have known, that Plaintiff and other drivers were not paid overtime that they were owed. FedEx has thus acted with reckless disregard for Plaintiff's rights.

72. However, regardless of FedEx's actual or constructive knowledge of Plaintiff's failure to be paid overtime for all eligible hours, FedEx is Plaintiff's "employer," as defined by the FLSA. FedEx is therefore liable for any overtime payments that are due to Plaintiff.

## COUNT I
## (Unpaid Overtime Under the FLSA)

73. The FLSA, 29 U.S.C. § 207(a)(1), requires that employees receive overtime premium pay of "not less than one and one-half times" their regular pay rate for hours worked beyond 40 per workweek. FedEx is liable under the FLSA for unpaid overtime owed to Plaintiff. FedEx's violation of the FLSA has been willful and in reckless disregard of Plaintiff's rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bartholomew Charles seeks the following relief:

A. Restitution for all unpaid overtime owed to Plaintiff;

B. Liquidated damages and prejudgment interest, pursuant to the FLSA;

C. Litigation costs, expenses, and attorneys' fees; and

D. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on their claims.

Respectfully submitted,

BARTHOLOMEW CHARLES,

By his attorneys,

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan
Bradley Manewith (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com
bmanewith@llrlaw.com